The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner John A. Hedrick, the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award. Accordingly, the Full Commission affirms and adopts the Opinion and Award of the Deputy Commissioner.
***********
The Full Commission finds as fact and concludes as matters of law the following:
 STIPULATIONS
1. On the dates of plaintiff's alleged injuries, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On those dates, an employment relationship existed between plaintiff and defendant-employer.
3. A set of plaintiff's medical records, marked as Stipulated Exhibit Number One, is admitted into evidence.
4. A set of records consisting of Industrial Commission forms, employment records and investigation records, marked as Stipulated Exhibit Number Two, is admitted into evidence.
***********
Based upon all of the competent evidence of record, the Full Commission adopts the findings of fact of the Deputy Commissioner as follows:
 FINDINGS OF FACT
1. Plaintiff is thirty-four years old (DOB: 5/8/65). She is a high school graduate and has attended college for one semester during which she studied marketing and retail sales. She attended secretarial school and received a certificate for completion of that course of study in the 1980s. She became a certified nursing assistant in 1996. Plaintiff's employment history included work as an inspector for a turkey processor and work for a manufacturer of automobile parts where she worked trimming rubber gaskets.
2. Plaintiff began working for defendant-employer in April 1996. She was hired to work approximately thirty hours per week. She earned $5.15 per hour. Plaintiff assisted defendant-employer's elderly clients by cleaning their homes and performing various household chores, taking them on personal errands and assisting them with personal hygiene.
3. On 4 June 1998, plaintiff went to a local grocery store to purchase some personal items. Two grocery store employees were engaged in horseplay. One of the employees unintentionally struck plaintiff in her chest. On 6 June 1998, she presented to the Wayne Memorial Hospital emergency department. She was very upset about the incident that occurred on 4 June 1998 in the grocery store. She presented to the emergency department due to chest pain and shortness of breath. Plaintiff was diagnosed as having a chest wall injury. She was prescribed Tylenol. However, no other treatment was recommended. Plaintiff returned to the emergency department on 19 June 1998 requesting a re-evaluation of her chest pain. Plaintiff was experiencing persistent chest pain and did not believe that her breathing was normal. She also complained of malaise and nausea. The examining physician found "virtually non-existent" "physical findings" and plaintiff's complaints were "way out of proportion to them".
4. On 16 June 1998, plaintiff's family physician excused her from work until 19 June 1998.
5. On 30 June 1998, plaintiff was performing her usual duties for defendant-employer. On that date, plaintiff was assisting Ms. Pope. After arriving at Ms. Pope's home, plaintiff dusted, vacuumed and cleaned an air conditioning filter. Plaintiff mentioned to Ms. Pope that she felt hot and did not feel well. Later, plaintiff cleaned Ms. Pope's bathroom. While cleaning the bathroom, plaintiff used a product that looked like a Tilex bottle. Plaintiff believed that the bottle contained a liquid form of Comet cleanser. After she completed cleaning the bathroom, but before she left the bathroom, plaintiff felt weak. She also felt as if she "had to get herself together." As plaintiff began to exit the bathroom, she held onto the shower door for support. As she was exiting through the bathroom door, plaintiff fell, landing on her left side. Her left side struck the door.
6. An ambulance was called to Ms. Pope's home and plaintiff was transported to the Wayne Memorial Hospital emergency department. Upon arriving in the emergency department, plaintiff reported that she had been working, using Tilex to clean a bathroom. She also reported that she felt weak and dizzy. On physical examination, the emergency department physician found no abnormality.
7. Plaintiff experienced weakness and shortness of breath prior to 30 June 1998.
8. After presenting to the emergency department, plaintiff returned to defendant-employer's administrative office where she completed and turned in her time sheets.
9. On or about 1 July 1998, plaintiff returned to work and worked in the home of a client. Upon observing plaintiff, the client asked plaintiff not to do any work, but to seek medical treatment instead. Thereafter, plaintiff presented to Goshen Medical Center where she was examined by Dr. Saluke. Plaintiff reported to Dr. Saluke that she had fainted at work the previous day after cleaning the bathroom with Tilex or Comet. She reported that she had not been overcome by fumes. She felt dizzy prior to cleaning the bathroom. She also reported that she had been experiencing fatigue and shortness of breath for one to two months. Plaintiff's primary reason for presenting to Dr. Saluke was to "settle the reason for her chest pain which she [said] came as a result of an episode at a [grocery store]."
10. On 6 July 1998, plaintiff worked in the home of a client named Ms. Winn. Plaintiff was experiencing weakness while working in Ms. Winn's home. Plaintiff testified that her foot became entangled in an electrical cord and caused her to fall, landing on her left side. Again plaintiff was transported by ambulance to the Wayne Memorial Hospital emergency department. Plaintiff did not report falling as a result of becoming entangled in an electrical cord. Rather, she reported that she nearly lost consciousness and that she was experiencing sharp anterior chest pain. On examination, plaintiff's vital signs were normal, her oxygen level was normal and a glucose test revealed no abnormality. The examining physician directed plaintiff to wear a halter heart monitor for twenty-four hours and to seek a follow-up evaluation from a cardiologist.
11. Plaintiff last worked for defendant-employer or any other employer on 6 July 1998.
12. Plaintiff was evaluated by Dr. Desai on 16 July 1998. Plaintiff reported that her symptoms began in early June when she was struck in the chest by a grocery store employee. She described experiencing symptoms since that date including chest pain, shortness of breath, dyspnea with exertion and two syncopal episodes. The halter heart monitor test results were unremarkable. Dr. Desai formed a working diagnosis that did not include any significant cardiac problem. However, the results of the stress test administered were inconclusive due to plaintiff's suboptimal effort.
13. On 20 July 1998, plaintiff presented to Dr. de Araujo, an orthopedist. Plaintiff complained of low back pain and posterior left shoulder pain. Dr. de Araujo diagnosed plaintiff as having a left shoulder and lumbar strain secondary to fainting and falling on 30 June 1998. Later on 20 July 1998 plaintiff presented to Dr. Saluke. She reported another syncopal episode on 6 July 1998 after cleaning a bathroom, but she again denied that chemicals might have affected her breathing.
14. On 14 July 1998, plaintiff filed an Industrial Commission Form 18, Notice of Accident to Employer. On that form, plaintiff stated that her injury was caused by "falling out at client Ms. Pope and falling out at client Ms. Winn." On 27 August 1998, plaintiff filed an Industrial Commission Form 18, Notice of Accident to Employer. On that form, plaintiff stated that her injury was caused by "while vacuuming at work my foot got entangled in the cord then I fell on the floor."
15. On 9 September 1998, plaintiff presented to Wayne County Mental Health center upon referral by Dr. Watson. Plaintiff was diagnosed as having an unspecified adjustment disorder.
16. Plaintiff presented to Dr. Torres on 12 October 1998 upon referral by Dr. Watson. Plaintiff's neurological examination was completely normal. Dr. Torres recommended an MRI of the brain. She also agreed with Dr. Watson that it is very important for plaintiff to be seen by a psychiatrist on a regular basis.
17. Plaintiff's falls on 30 June 1998 and 6 July 1998 were not due to unexpected or unusual conditions likely to result in injurious consequences. Rather, her falls on those dates were due to an idiopathic condition unrelated to her employment with defendant-employer.
***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff did not sustain an injury by accident arising out of and in the course of her employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff is entitled to no compensation under the North Carolina Workers' Compensation Act.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Under the law, plaintiff's claims must be, and the same are hereby, DENIED.
2. Each party shall bear its own costs.
This 18th day of June 1999.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/_____________ BERNADINE S. BALLANCE COMMISSIONER
S/_____________ J. HOWARD BUNN, JR. CHAIRMAN